HACKETT *v.* WILSON TRANSIT CO.

1. VESSELS — COLLISION — SHIP CANAL — ACTION FOR DEATH OF CAPTAIN—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.
    On a clear but dark night, the steam tug of which plaintiff's intestate was captain entered a 300-foot wide ship canal from the south, running at a proper speed and in a proper course, well over towards the east pier. About the same time defendant's steamer and tow, connected by a 1,000-foot hawser, entered the canal from the north. The steamer signaled the tug to maintain her course, which she did; but the tow sheered over to the east pier, across the course of the tug,

and the hawser swept off her upper works, killing intestate. It appeared that intestate signaled his engineer to stop, but gave no signal to back. *Held*, that, in the absence of any evidence as to when the danger became apparent to intestate, and in view of testimony tending to show that an attempt to back the tug would have increased the danger, the question of whether intestate was guilty of contributory negligence should have been submitted to the jury.

2. SAME—NEGLIGENT NAVIGATION.

The question of whether there was negligence in the management of defendant's boats was also for the jury; the act of Congress regulating navigation requiring that steam vessels, when about to meet in channels less than 500 feet wide, shall each slow down to moderate speed, according to circumstances, and there being testimony to the effect that defendant's boats were running 10½ miles an hour when they entered the canal, and 8 miles an hour at the time of the collision.

Error to St. Clair; Thomas, J. Submitted January 30, 1902. Decided March 4, 1902.

Case by Percey Hackett, administrator of the estate of Ralph Hackett, deceased, against the Wilson Transit Company, for negligently causing the death of plaintiff's intestate. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Reversed.

*John B. McIlwain* (*Joseph Walsh*, of counsel), for appellant.

*Harvey D. Goulder* (*P. H. Phillips*, of counsel), for appellee.

MONTGOMERY, J. Plaintiff, as administrator of the estate of Ralph Hackett, deceased, brings this action to recover damages for causing the death of plaintiff's intestate on the 17th of July, 1895. At the conclusion of the plaintiff's case the learned circuit judge directed a verdict for the defendant, on the ground that the evidence failed to show due care on the part of decedent, and plaintiff brings the case here for review on error.

The testimony adduced on the part of the plaintiff

tended to show that plaintiff's intestate was master of the tug Torrent, about 150 feet in length and 21 feet beam. On the evening of July 17, 1895, the Torrent was bound up through the St. Clair Flats Canal, loaded with 125 tons of coal, navigating at a proper speed, and in her proper position, well over to the east pier. The night was dark, but clear. The course of the canal is substantially north and south, and the canal is about 7,221 feet long, 298 feet wide, and has a light on each end of the west pier. On the night in question, at about the time the Torrent entered the south end of the channel, the defendant's two boats, consisting of the steamer Sitka, and the Yukon in tow, connected by a 4-inch hawser, 800 to 1,000 feet long, entered the canal, bound down. These boats were 280 feet long and 41 feet beam, each, loaded with iron ore, and drawing about 14 feet 6 inches of water. From a statement made by defendant's counsel in opening the case, it would appear that these boats came into the canal at a speed of 10½ or 11 miles an hour. After entering the canal, the Yukon sheered to the east pier, and rebounded to the west pier, striking the west pier at a point about 2,000 feet from the north end, and rebounded again on a broad sheer to the east pier, across the course of the up-bound Torrent. The Torrent was then standing out about 50 feet from the east pier, and the Yukon passed down between the Torrent and the east pier. The towline between the Sitka and the Yukon swept off all the upper works of the Torrent, killing the plaintiff's intestate, who was master of the Torrent, the lookout, Kinirie, and the mate's son. Capt. Hackett, plaintiff's intestate, was at the time forward, at his post of duty. There is some uncertainty as to the signals given to the engineer by the deceased. The circuit judge construed the testimony as indicating that, while the deceased gave a signal to the engineer to stop, no signal which could be construed as a signal to back up was given, and that in this failure to give such signal the deceased was guilty of contributory negligence. It appears by the testimony that the head-

way of the Torrent could not be stopped short of three or four lengths.

If the case were to turn upon the question of whether the signal to back up was given by the deceased, we should hesitate to disturb the ruling of the circuit judge. The testimony upon this point is that of the engineer, who, while his testimony is somewhat confused, certainly did not construe the signals as signals to back. But we do not think it fatal to the plaintiff's case if it be said that it affirmatively appears that no signals to back up were given. There is testimony which would have justified the jury in inferring that backing up the engine would have thrown the Torrent into the center of the canal, and more certainly in the way of the approaching vessels, and this might present the question as to whether to back up the vessel was the wisest thing to do under the circumstances. Furthermore, it does not appear just when the necessity of prompt action to avert the danger was made apparent to Capt. Hackett. As before stated, the night was dark, and the jury might well have found that the captain would not have been able to discern the hull of the Yukon at any considerable distance. If so, there would be no indication to him that a collision was impending until the Yukon had sheered sufficiently to obscure her port light. In measuring the deceased's care, it is to be kept in mind that the Sitka had signaled the Torrent to pass to port, and that she was in this course when the collision occurred. The master had the right to assume that he was pursuing his course in safety until something occurred to indicate danger. If he was unable to discern the hull of the Yukon, that danger would not be apparent to him until the port light was obscured. Assuming negligence on the part of defendant's servants, we think it is a question for the jury as to whether deceased acted with reasonable promptness after opportunity of discovering his peril and the peril to his vessel.

But it is contended that the defendant's negligence was not shown. The act of Congress regulating navigation

requires that steam vessels, when about to meet in channels of less than 500 feet, shall each be slowed down to a moderate speed, according to circumstances. This is little more than a declaration of a rule of common prudence. It appears that the Sitka entered this channel, with another vessel in tow, at 10½ miles an hour, and there was testimony which would have justified a finding that, at the time when the collision occurred, she was still running at a speed of 8 miles an hour. It is certain that she was unable to control the Yukon, and that, when the latter vessel sheered to the opposite side of the channel, the result was that defendant's two vessels and the towline swept the channel from side to side, and would, of necessity, carry away everything before them. Whether this was preventable, as well as whether, if preventable, the management of the boats which brought about this condition was negligent, we cannot think are questions of law, to be determined in the negative. In a case arising out of this same collision, instituted by the representatives of Kinirie, a verdict against the defendant was obtained in the United States circuit court for the Eastern district of Michigan, and affirmed on error by the court of appeals. *Wilson Transit Co.* v. *Kinirie*, 34 C. C. A. 691, 92 Fed. 1023. No opinion was filed by the court, but presumably the facts appeared to the court, and the opinion of that court, while not controlling, is entitled to weight.

We think a case was made for the consideration of the jury, and the judgment will be reversed, and a new trial ordered.

HOOKER, C. J., MOORE and GRANT, JJ., concurred. LONG, J., did not sit.